## UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**THOMAS E. GOVE, JR.,**                          Chapter 7
     Debtor                          Case No. 09-22405-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**GEORGE T. O'BRINE,**
     Plaintiff
v.                                              Adv. P. No. 10-1048
**THOMAS E. GOVE, JR.,**
     Defendant

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

### MEMORANDUM

### I. INTRODUCTION

Four matters are before the Court: (1) the Motion for Summary Judgment filed by

George T. O'Brine ("O'Brine") with respect to all counts set forth in his Complaint in

which he seeks a determination that the debt of Thomas E. Gove, Jr. ("Gove" or the

"Debtor") to him should be excepted from discharge; (2) the Motion for Relief from the

Automatic Stay, pursuant to which O'Brine requests that the Court lift the automatic

stay in the Debtor's Chapter 7 case so that the parties can proceed with a hearing at the

Middlesex Probate and Family Court, Department of the Trial Court ("Middlesex

Probate and Family Court") regarding a contempt petition that O'Brine filed against

Gove; (3) the Motion for Counsel Fees, pursuant to which O'Brine seeks an award of

attorney's fees and costs incurred in seeking relief from stay, filing the contempt

1

petition, and filing and litigating the adversary proceeding; and (4) the Motion to Compel Defendant to Answer Plaintiff's Interrogatories and Production of Documents, through which O'Brine seeks discovery from the Debtor.

## II. FACTS

A. <u>The Divorce Action and The Contempt Petition</u>

On January 3, 2008, Gove commenced a divorce action against his then wife, Carrie Ann Fawkes ("Fawkes"), in the Middlesex Probate and Family Court.  On June 8, 2009, Gove filed "Plaintiff's Motion for Further Temporary Orders" in the divorce proceeding, requesting the appointment of a Guardian Ad Litem ["GAL"] or Parenting Coordinator "to make recommendations on custody and visitation and summer visitation schedule" regarding the couple's daughter.  In the Motion for Further Temporary Orders, Gove requested "[t]hat the parties share equally the cost of the Guardian Ad Litem."  On June 8, 2009, the Middlesex Probate and Family Court allowed the appointment of a GAL and issued an order appointing "George Thomas O'Brien [sic]" of 24 Main St., Peabody, MA as the GAL "to investigate and report on . . . issues of legal and physical custody [and] issues of visitation/parenting plan/access to child(ren)."  In its order, the Probate Court stated that the GAL fees "shall be paid by the Plaintiff, 'Father,' initially[,] subject to possible allocation between the parties following trial."

Approximately ten weeks after the appointment of the GAL, on August 20, 2009, Gove and Fawkes entered into a separation agreement, which included "Exhibit C Financial Arrangements."  In "Exhibit C Financial Arrangements," the parties agreed

that "HUSBAND [Gove] shall pay for the cost of the Guardian Ad Litem, Attorney George T. O'Brine, in this action."   On the same day, Gove and Fawkes agreed and stipulated that "Exhibit C Financial Arrangements" "shall be made an order of judgment of this court . . .  [and] shall be incorporated in the Judgment of Divorce," and the Middlesex Family and Probate Court entered a judgment of divorce nisi.

On November 19, 2009, the Register of the Middlesex Probate and Family Court certified that the Judgment of Divorce became absolute.  At that time, Gove had not paid O'Brine.[1]  Consequently, in late November of 2009, O'Brine filed a contempt petition seeking payment of his fees in the Middlesex Probate and Family Court. The hearing date for the contempt petition was set for March 7, 2010.[2]

B. The Chapter 7 Case

Gove filed his Chapter 7 petition on December 23, 2009.  He listed O'Brine as the holder of an unsecured, nonpriority claim in the amount of $9,500 on Schedule F.  On January 22, 2010, O'Brine filed the Motion for Relief from the Automatic Stay, which is now before the Court.   In his two-paragraph motion, he asked the Court to lift the automatic stay under 11 U.S.C. § 362(d) to allow him to proceed with his contempt petition scheduled for March 7, 2010 in the Middlesex Probate and Family Court.[3]  On

---

[1] According to the Joint Pretrial Statement, the parties had agreed that Gove would pay the GAL fees in installments.  However, O'Brine claimed he received only one payment of an unspecified amount.

[2] O'Brine stated in his Motion for Relief from the Automatic Stay that the hearing was scheduled for March 7, 2010.  However, O'Brine stated in the Joint Pretrial Memorandum that the hearing was scheduled for and held on January 3, 2010.

[3] O'Brine did not specify under which subsection of § 362(d) he was proceeding.

February 5, 2010, the Debtor filed an Opposition to O'Brine's Motion for Relief from the Automatic Stay, asserting that O'Brine was merely an unsecured, nonpriority creditor in the case.   Further, the Debtor argued that relief from the automatic stay was unwarranted as O'Brine had no authority to attempt to collect the debt during the Chapter 7 case.

On February 25, 2010, O'Brine submitted an Affidavit in Support of his Motion for Relief from Stay, asserting that Gove had not paid for his services as GAL despite promises to do so and that Gove's debt to him was nondischargeable.[4]   The Court scheduled O'Brine's Motion and the Debtor's Opposition for hearing, but one or the other party repeatedly sought continuances of the hearing.

On March 24, 2010, O'Brine filed a "Memorandum of Law in Support of Allowance of Attorney Fees caused by the Filing Motion for Relief for Automatic Stay" [sic].   In support of both his request for fees and his Motion for Relief from Stay, he cited, among other cases, In re Shepard, 2008 WL 5157898 (Bankr. D. N.M. June 30, 2008), in which the bankruptcy court awarded to the debtor's ex-wife fees owed to third parties in relation to a marital separation agreement, ruling that they were

---

[4] O'Brine did not specify in his Affidavit the subsection of 11 U.S.C. § 523(a) upon which he relied.   He simply cited 11 U.S.C. § 523.   O'Brine attached several cases to his Affidavit in which courts discussed nondischargeability under different subsections of § 523 in addition to In re Shepard, 2008 WL 5157898 (Bankr. D. N.M. June 30, 2008), including the following:   In re Murphy, 2009 WL 3185488 (Bankr. D. Kan. September 29, 2009) (discussing nondischargeability under § 523(a)(2), (4) and (6)); In re Trump, 309 B.R. 585 (Bankr. D. Kan. 2004) (discussing nondischargeability under § 523(a)(5)); In re Patrick  & Pierce, 2009 WL 2513438 (Bankr. D. Neb. July 14, 2009) (discussing nondischargeability under § 523(a)(19)); In re Busch, 369 B.R. 614 (B.A.P. 10th Cir. 2007) (discussing nondischargeability under § 523(a)(5)).

nondischargeable debts under 11 U.S.C. § 523(a)(15).  O'Brine requested that Gove be ordered to pay both his GAL fees and the fees incurred in seeking relief from the automatic stay to enforce the order of the Middlesex Probate and Family Court.  He cited case law from other districts in support of the contention that bankruptcy courts have the power to award attorney's fees.[5]  Specifically, O'Brine sought attorney's fees in the sum of $2,500 and reimbursement of the filing fees he incurred.

On June 16, 2010, O'Brine filed a Motion for Counsel Fees with an Affidavit in Support of Fees and Costs, in which he described the work he performed in pursuing relief from the automatic stay and the commencement of the adversary proceeding discussed below.  O'Brine stated that he worked 28 hours at a rate of $250 per hour, incurring attorney's fees of $7,000.  He also sought $170 in expenses: $160 in filing fees and $10 for parking.  On August 10, 2010, O'Brine filed his Second Affidavit in Support of Counsel Fees, seeking additional fees and costs. Specifically, he sought compensation for 27.5 hours of work at an hourly rate of $250, resulting in $6,875 in additional attorney's fees plus $250 in expenses, bringing the total prayer for attorney's fees and costs to $14,287.

On September 7, 2010, O'Brine filed the Affidavit of Maurice J. Ringel, Esq. ("Ringel"), Fawkes's counsel in the divorce action.  Ringel attested to the appointment of O'Brine as GAL in the divorce action and stated that he "heard Mr. Gove state that he

---

[5] *See* <u>Murphy</u>, 2009 WL 3185488, at *9 ("The Court will reserve ruling on Plaintiff's request for attorney [sic] fees pending further hearing . . ." as neither party discussed the grounds for the prayer for attorney's fees.); <u>Busch</u>, 369 B.R. at 626 (noting that the bankruptcy court properly awarded attorney's fees under Utah statute).

would 'never' pay the GAL's invoice."  The Court held a hearing regarding the Motion for Counsel Fees on October 19, 2010, as well as the Motion for Relief from the Automatic Stay. The parties agreed to consolidate the Motion for Relief from Stay with the adversary proceeding, discussed below, and the Court took all matters under advisement.

### C. The Adversary Proceeding

On February 9, 2010, O'Brine commenced an adversary proceeding against Gove. O'Brine requested that "his name be stricken as a creditor and the automatic stay of the contempt proceeding be lifted and/or; Mr. O'Brine's court ordered debt owed by Mr. Gove debt [sic] not be discharged pursuant to 11 USC. 523 [sic]; or; Mr. Gove be denied a discharge."  O'Brine alleged that because Gove's debt was incurred in connection with O'Brine's services as a GAL in the divorce action and because the Judgment of Divorce required Gove to pay the GAL fees, the debt is nondischargeable under 11 U.S.C. § 523(a)(15) as a divorce or separation obligation other than a domestic support order. Further, O'Brine alleged that he "was informed that Mr. Gove had stated that he had no intention of fulfilling his court imposed obligation," although when O'Brine asked Gove and his attorney, Mark Bartolomei[6] about repayment of his GAL fees, they both represented Gove would pay the fees.

---

[6] Attorney Bartolomei represented Gove in the divorce action, Chapter 7 filing and the adversary proceeding. On October 13, 2010, Bartolomei filed a Motion to Withdraw as Attorney for the Debtor and Defendant because "Debtor and counsel have experienced a breakdown in the attorney-client relationship and Debtor has recently advised counsel that he no longer desires his representation in this matter and that he is prepared to move forward without the services of an attorney."  On October 19, 2010, the Court granted Bartolomei's Motion to Withdraw.

On March 11, 2010, Gove filed his Answer, denying that the GAL fees are a nondischargeable debt and that the Judgment of Divorce required him to pay for the GAL services.  Further, Gove denied that O'Brine ever asked Gove or his attorney about payment of the GAL fees and denied that Gove or Bartolomei stated that Gove would pay the fees.  In his Answer, Gove set forth as an affirmative defense that O'Brine's Complaint failed to state a claim upon which relief could be granted and requested the Court to dismiss the Complaint.

On June 8, 2010, O'Brine filed a Motion for Summary Judgment, supported by an Affidavit and a Memorandum of Law.  In his Motion, he asserted that summary judgment was warranted because Gove had no defenses to the Complaint and the Debtor fraudulently intended to file a bankruptcy petition to obtain a discharge of the debt owed to him.  O'Brine alleged that Gove's bankruptcy filing was executed "in violation of both state court orders and Federal Bankruptcy law" and that he filed his Chapter 7 petition and named O'Brine as an unsecured creditor to intentionally circumvent 11 U.S.C. § 523.  In his supporting Memorandum, O'Brine argued that Gove's debt to O'Brine is not dischargeable under 11 U.S.C. § 523(a)(15).[7]  O'Brine

---

[7] O'Brine set forth the following cases supporting his argument for the nondischargeability of the debt: <u>In re Brodsky</u>, 239 B.R. 365 (Bankr. N.D. Ill. 1999) (fees incurred by attorney in representing debtor's children in debtor's divorce case were nondischargeable under § 523(a)(5)); <u>In re Chang</u>, 163 F.3d 1138 (9th Cir. 1998) (GAL fees incurred in debtor's child custody dispute were nondischargeable under § 523(a)(5)); <u>In re Busch</u>, 369 B.R. 614 (B.A.P. 10th Cir. 2007) (court awarded wife's attorney's fees incurred in pursuing a § 523(a)(5) under a Utah statute that allowed for such fee awards).  Notably, the decisions reference § 523(a)(5), not (a)(15).

emphasized that he filed his GAL report on August 1, 2009, in compliance with the deadline established by the Middlesex Probate and Family Court.

In his Memorandum filed in support of his summary judgment motion, O'Brine included a prayer for an award of the fees and costs he incurred in filing the contempt petition and adversary proceeding under 11 U.S.C. § 523(a)(2)(A).  O'Brine alleged that Gove never intended to pay the GAL fees and always intended to file a Chapter 7 petition for the purpose of discharging the debt.   Further, O'Brine argued that Gove's statements to the contrary constitute fraud on the Bankruptcy Court and the Middlesex Probate and Family Court and that these fraudulent statements and acts caused O'Brine to file the contempt petition and the adversary proceeding and therefore incur fees and costs.[8]

On October 19, 2010, the Court held a Pretrial Conference, heard the parties with respect to O'Brine's Motion for Summary Judgment and took the matter under advisement.  The issue of whether the debt to Gove is excepted from discharge under 11 U.S.C. § 523(a)(5), rather than under 11 U.S.C. § 523(a)(15), was raised at the hearing on October 19, 2010, while Gove was present.

---

[8] O'Brine cited cases in support of his prayer for attorney's fees.  O'Brine referenced Travelers Cas. & Sur. Co. v. Pacific Gas and Elec. Co., 549 U.S. 443, 127 S. Ct. 1199 (2007), in which the Supreme Court of the United States considered an award of attorney's fees, negotiated by contract, in a Chapter 11 case.  O'Brine also referenced Cohen v. de la Cruz, 523 U.S. 213, 118 S. Ct. 1212 (1998), in which the Supreme Court of the United States affirmed an award of treble damages and attorney's fees under the New Jersey Consumer Fraud Act.  O'Brine noted that "Massachusetts allows a court to award double damages, court costs and attorney's fees for fraudulent conduct and cases of common law fraud," yet offered no authority for his assertion in the procedural context of the case.

On March 12, 2010, the Court issued a Pretrial Order, requiring the parties to complete discovery by June 10, 2010 and to file a Joint Pretrial Memorandum by July 12, 2010.  Following a discovery dispute, the Court continued the discovery deadline until September 13, 2010.  Nevertheless, on July 22, 2010, the parties submitted a Joint Pretrial Statement in which they asserted that there were no issues of fact that remained to be litigated.  The parties stated that the only issues of law that remained to be litigated were whether O'Brine is entitled to attorney's fees and whether Gove's debt to O'Brine is dischargeable.

On October 7, 2010, O'Brine filed a Motion to Compel Gove to Answer O'Brine's Interrogatories and Production of Documents by October 15, 2010.  In O'Brine's attached Affidavit, he stated that the Court ordered Gove to answer discovery requests by September 13, 2010, and that he did not do so.  The Court held a hearing regarding the Motion to Compel on October 19, 2010 and took the matter under advisement.

### III. POSITIONS OF THE PARTIES

A. <u>O'Brine's Argument</u>

O'Brine argues that Gove's debt for GAL fees is nondischargeable under 11 U.S.C. § 523(a)(15) because in the Judgment of Divorce, the Middlesex Probate and Family Court ordered Gove to pay O'Brine  for his services as GAL in the divorce action.  Further, O'Brine contends that he is entitled to relief from the automatic stay to pursue collection of the nondischargeable debt in the Middlesex Probate and Family Court as Gove is in contempt of the Judgment of Divorce because he has not paid the GAL fees.  O'Brine argues that Gove should be compelled to produce discovery as the

Court ordered Gove to do so and he has not complied.  Finally, O'Brine prays for an award of the attorney's fees and costs he incurred in filing the Motion for the Relief from Stay, the contempt petition and the adversary proceeding under 11 U.S.C. § 523(a)(2)(A).

### B. Gove's Argument

Gove denies that the obligation to pay GAL fees is a nondischargeable debt and argues that he properly treated O'Brine "as an unsecured nonpriority creditor . . ." in this case.  Further, Gove asserts that relief from the automatic stay is not warranted and that O'Brine had no authority to attempt to collect the debt during the Chapter 7 case.

## IV. DISCUSSION

### A. Motion for Summary Judgment

#### 1. Summary Judgment Standard

A court shall grant summary judgment to the moving party if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c), made applicable to this proceeding by Fed. R. Bankr. P. 7056.  If the nonmoving party has the burden of proof on any issues, the moving party need not do more than state "'an absence of evidence to support the nonmoving party's case.'"  Desmond v. Varrasso (In re Varrasso), 37 F.3d 760, 763 n.1 (1st Cir. 1994) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 2553-54, 91 L.Ed.2d 265 (1986)).  "The burden of production then shifts to the nonmovant, who, to avoid summary judgment, must establish the existence of at least one question

of fact that is both 'genuine' and 'material.'"  <u>Varrasso</u>, 37 F.3d at 763 n.1 (quoting

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed. 2d 202

(1986)).  Further, Federal Rule of Civil Procedure 56(e)(2) provides:

> When a motion for summary judgment is properly made
> and supported, an opposing party may not rely merely on
> allegations or denials in its own pleading; rather, its
> response must—by affidavits or as otherwise provided in
> this rule—set out specific facts showing a genuine issue for
> trial.  If the opposing party does not so respond, summary
> judgment should, if appropriate, be entered against that
> party.

Fed. R. Civ. P. 56(e)(2).

　　B. <u>Analysis</u>

　　　　1. Nondischargeable Debts under 11 U.S.C. § 523(a)(5)

　　Generally, an individual Chapter 7 debtor is entitled to a discharge  of the debts

that arose before the date of the order for relief. 11. U.S.C. § 727(a)-(b).  However, 11

U.S.C. § 523(a) provides "exceptions to discharge for certain debts which Congress has

determined should be non-dischargeable."  <u>Shepard</u>, 2008 WL 5157898, at *1.  The party

moving to establish the nondischargeability of a debt must "prov[e] the elements of the

exception by a preponderance of the evidence."  <u>Id.</u>; *see also* <u>Grogan v. Garner</u>, 498 U.S.

279, 279, 111 S. Ct. 654, 655 (1991).   Under U.S.C. § 523(a)(5) "a domestic support

obligation" is a nondischargeable debt.  Section 101(14A) defines the term "domestic

support obligation":

> The term 'domestic support obligation' means a debt that accrues before,
> on, or after the date of the order for relief in a case under this title,
> including interest that accrues on that debt as provided under applicable

11

nonbankruptcy law notwithstanding any other provision of this title, that is-

> (A) owed to or recoverable by-

>> (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or

>> (ii) a governmental unit;

> (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;

> (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of-

>> (i) a separation agreement, divorce decree, or property settlement agreement;

>> (ii) an order of a court of record; or

>> (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and

> (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

11 U.S.C. § 101(14A).

Courts have employed a four part test to determine whether GAL fees qualify as a domestic support obligation under 11 U.S.C. 101(14A).[9]  In re Defilippi, 430 B.R. 1, 3

_____

[9] The definition of "domestic support obligation" was changed by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 § 215 (Apr. 20, 2005) ("BAPCPA"), as the fourth prong of the test was added.  Nonetheless, cases analyzing whether a debt is nondischargeable under 11 U.S.C. § 523(a)(5) both

n.7 (Bankr. D. Me. 2010).  The debt must be owed "(1) 'to a . . . child of the debtor;' (2)

incurred for the 'support' of the child; and (3)'in connection with' an 'order of a court of

record.'"  <u>Spear v. Constantine (In re Constantine)</u>, 183 B.R. 335, 336 (Bankr. D. Mass.

1995) (citing 11 U.S.C. § 101(14A)); *see also* <u>Defilippi</u>, 430 B.R. at 3.   BAPCPA added a

fourth requirement that the debt must not "have been assigned to a non-governmental

entity." <u>Id.</u> at 3 n.7 (citing 11 U.S.C. § 101(14A)).

Although O'Brine did not file a complaint to determine the nondischargeability

of the GAL fees under 11 U.S.C. § 523(a)(5), the Court may nonetheless find that the

debt is nondischargeable under that subsection because 11 U.S.C. § 523(c)(1) does not

condition nondischargeability under 11 U.S.C. § 523(a)(5) on the timely filing of a

complaint. 11 U.S.C. § 523(c)(1); <u>In re Phillips</u>, 2009 WL 2514162, at *3 (Bankr. D. Mass.

August 13, 2009).  Under Fed. R. Civ. P. 15(b), made applicable to this Court by Fed. R.

Bankr. P. 7015, the Court may *sua sponte* amend the "pleadings to include new legal

claims . . . 'when issues not raised in the pleadings are tried by express or implied

consent of the parties.'"  <u>In re Parker</u>, 334 B.R. 529, 537 (Bankr. D. Mass. 2005) (quoting

<u>In re Zaino</u>, 316 B.R. 1, 8-11 (Bankr. D. R.I. 2004) (holding that a court can *sua sponte*

consider whether a debt was nondischargeable under 11 U.S.C. § 523(a)(2)(A)); *see also*

<u>In re Dobrayel</u>, 287 B.R. 3, 19 (Bankr. S.D.N.Y. 2002) ("[T]he [c]ourt will *sua sponte*

examine non-dischargeability under Section 523(a)(4) without formal amendment of the

---

before and after BAPCPA are relevant to analysis of this case because the fourth prong
is irrelevant to the current facts.  "The 2005 amendments did not effect a substantive
change to the pertinent definition and discharge exception." <u>In re Defilippi</u>, 430 B.R. 1,
3 n.6.  *See also* <u>In re Bonito</u>, 2010 WL 3398396, at *2 (Bankr. D. Conn. August 26, 2010); <u>In
re Burnes</u>, 405 B.R. 654, 658-59 (Bankr. W.D. Mo. 2009).

complaint because 'all of the material facts' necessary for non-dischargeability under [the] subsection . . . ha[d] been pleaded in the complaint and proven at trial.'") (quoting Farraj v. Soliz (In re Soliz), 201 B.R. 363, 370 (Bankr. S.D. N.Y. 1996)).

In the present case, the issue of whether the debt to Gove is excepted from discharge under 11 U.S.C. § 523(a)(5) was raised at the hearing on October 19, 2010, while Gove was present.  Further, O'Brine included all facts necessary in his Complaint to warrant a finding that the debt is nondischargeable under 11 U.S.C. § 523(a)(5). Based upon the undisputed facts, the  Court finds that the order of the Middlesex Probate and Family Court requiring Gove to pay GAL fees to O'Brine qualifies as a "domestic support obligation" as defined in 11. U.S.C. § 101(14A) and, therefore, is a nondischargeable debt under 11 U.S.C. § 523(a)(5).

The first prong of the test is whether the debt is owed "'to . . . a child of the debtor.'"   Constantine, 183 B.R. at 336 (citing 11 U.S.C. § 101(14A)); *see also* Defilippi, 430 B.R. at 3.  Some courts have adhered strictly to the literal text of 11 U.S.C. § 101(14A) by holding that nondischargeable domestic support obligations cannot be owed to a third party.  *See, e.g.,* In re Euell, 271 B.R. 388, 390-93 (Bankr. D. Colo. 2002); In re Townsend, 177 B.R. 902, 904 (Bankr. E.D. Mo. 1995).  Nonetheless, several courts, interpreting the Bankruptcy Code before and after BAPCPA, have held that fees owed directly to third party GALs constitute a domestic support obligation under 11 U.S.C. § 101(14A). *See, e.g.,* Defilippi, 430 B.R. at 3, 5; Burnes, 405 B.R. at 658-59; In re Whitney, 265 B.R. 1, 2-3 (Bankr. D. Me. 2001); In re Miller, 55 F.3d 1487, 1490 (10th Cir. 1995); Constantine, 183 B.R. at 337; In re Stacey, 164 B.R. 210, 212 (Bankr. D. N.H. 1994).  These

courts focus not on to whom the debt is owed, but the nature of the debt, and focus their analysis on the second prong of the domestic support obligation definition. *See, e.g.,* Miller, 55 F.3d at 1489; Constantine, 183 B.R. at 336.

The second question arising under the domestic support obligation definition is whether the debt was "incurred for the 'support' of the child." Constantine, 183 B.R. at 336 (citing 11 U.S.C. § 101(14A)); *see also* Defilippi, 430 B.R. at 3. Several courts have held that GAL or attorney's fees incurred in determining child custody constitute support of the child. *See, e.g.,* Miller, 55 F.3d at 1490[10]; Matter of Dvorak, 986 F.2d 940, 941 (5th Cir. 1993); In re Peters, 133 B.R. 291, 297 (Bankr. S.D. N.Y. 1991). In fact, this Court stated that "services rendered by a guardian ad litem 'were so inextricably intertwined with the welfare of the children . . . that it would be unreasonable to characterize the fee award [paid directly to the GAL] as anything other than in the nature of support.'" Constantine, 183 B.R. at 336-37 (quoting Hack v. Laney (In re Laney), 53 B.R. 231, 235 (Bankr. N.D. Tex. 1985)).

---

[10] In In re Miller, the United States Court of Appeals for the Tenth Circuit stated:

> Since determination of child custody is essential to the child's proper 'support,' attorney fees incurred and awarded in child custody litigation should likewise be considered as obligations for 'support'. . . .

> Indeed, debts to a guardian ad litem, who is specifically charged with representing the child's best interests, and a psychologist hired to evaluate the family in child custody proceedings, can be said to relate just as directly to the support of the child as attorney's fees incurred by the parents in a custody proceeding.

55 F.3d at 1490 (quoting In re Poe, 118 B.R. 809, 812 (Bankr. N.D. Okla. 1990)).

In the instant case, the Middlesex Probate and Family Court appointed O'Brine as GAL "to investigate and report on . . . issues of legal and physical custody [and] issues of visitation/parenting plan/access to child(ren)."    Thus, O'Brine's GAL fees were "incurred for the 'support' of the child." *See* <u>Constantine</u>, 183 B.R. at 336 (citing 11 U.S.C. § 101(14A)); *see also* <u>Defilippi</u>, 430 B.R. at 3.

With respect to the third prong, the Judgment of Divorce and the Order of the Middlesex Probate and Family Court incorporated "Exhibit C Financial Arrangements," which provided that Gove "shall pay for the cost of the Guardian Ad Litem, Attorney George T. O'Brine, in [the divorce action]."    As such, Gove incurred his debt to O'Brine "'in connection with' an 'order of a court of record.'"    *See* <u>Constantine</u>, 183 B.R. at 336 (citing 11 U.S.C. § 101(14A)); *see also* <u>Defilippi</u>, 430 B.R. at 3.

The fourth prong of the domestic support obligation is easily met as Gove's debt has not "been assigned to a non-governmental entity."    <u>Defilippi</u>, 430 B.R. at 3 n.7 (citing 11 U.S.C. § 101(14A)(D)).

In this case, O'Brine is entitled to summary judgment as there are no issues of material fact and he is entitled to judgment as a matter of law with respect to an exception to discharge of his GAL fees.    Gove's obligation to pay GAL fees to O'Brine meets the definition of a domestic support obligation under 11 U.S.C. § 101(14A) and is, therefore, a nondischargeable debt under 11 U.S.C. § 523(a)(5).

2. Nondischargeable Debts under 11 U.S.C. § 523(a)(15)

O'Brine argues that the debt is nondischargeable under 11 U.S.C § 523(a)(15). That Bankruptcy Code section excepts from discharge debts:

> to a spouse, former spouse, or child of the debtor and not of the
> kind described in paragraph (5) that is incurred by the debtor in the
> course of a divorce or separation or in connection with a separation
> agreement, divorce decree or other order of a court of record, or a
> determination made in accordance with State or territorial law by a
> government unit.

11 U.S.C. § 523(a)(15).

Because this Court has found that Gove's liability to pay GAL fees is a
nondischargeable debt under 11 U.S.C. § 523(a)(5), the debt cannot simultaneously be
nondischargeable under 11 U.S.C § 523(a)(15). *See* Macy v. Macy, 200 B.R. 467, 470
(Bankr. D. Mass. 1996), *aff'd,* 114 F.3d 1, 2 (1st Cir. 1997).[11]

C. Motion for Counsel Fees

O'Brine asserts that he is entitled to attorney's fees under 11 U.S.C. §
523(a)(2)(A). Section 523(a)(2)(A), however, does not address awards of attorney's fees,
but is an exception to discharge for debts "obtained by false pretenses, a false
representation, or actual fraud" of the debtor. *See, e.g.,* In re Woodford, 403 B.R. 177,
184-89 (Bankr. D. Mass. 2009). The attorney's fees incurred by O'Brine for services in
pursuing collection of his GAL fees were not incurred as a result of any false
representations made by the Debtor; they were incurred pursuant to his appointment as
GAL. Therefore, O'Brine's reliance on 11 U.S.C. § 523(a)(2)(A) is misplaced.

The only provision of 11 U.S.C. § 523 that provides authority for an award of
attorney's fees is 11 U.S.C. § 523(d). That subsection applies exclusively to
circumstances where "a creditor requests a determination of dischargeability of a

---

[11] "Since the attorneys' fees are classified as nondischaregable under § 523(a)(5), §
523(a)(15) by its very terms is inapplicable." Macy, 200 B.R. at 470.

consumer debt under subsection (a)(2)" of 11 U.S.C. § 523.   11 U.S.C. § 523(d).

Furthermore, § 523(d) provides for attorney's fee only if the court determines that the

consumer debt is dischargeable and the creditor was not "substantially justified" in

asserting that the consumer debt was nondischargeable.  11 U.S.C. § 523(d); *see also* In re

Goldstein, 345 B.R. 412, 424 & n.7 (Bankr. D. Mass. 2006).

O'Brine's claim that his attorney's fees and costs incurred in attempting to collect

the GAL fees are nondischargeable does not meet the requirements of 11 U.S.C. §

523(d).  First, under that section, attorney's fees can only be awarded to the debtor.  *See*

*e.g.,* In re McCarthy, 243 B.R. 203, 208 (1st Cir. B.A.P. 2000) ("Section 523(d) was enacted

to discourage creditors from filing § 523(a)(2) complaints without first carefully

reviewing the legal and factual bases for their fraud-based nondischargeability

claims.").  In this case, O'Brine, a creditor, is seeking attorney's fees, a circumstance

which is not contemplated by the express language of 11 U.S.C. § 523(d). Because

O'Brine is not a debtor seeking attorney's fees relating to a dischargeable consumer

debt, the remaining requirements of 11 U.S.C. § 523(d) are inapplicable to the current

facts.  O'Brine did not move for an award of attorney's fees under 11 U.S.C. § 523(d),

and reliance on the only section of 11 U.S.C. § 523 providing for an awards attorney's

fees would have been misplaced.

Furthermore, O'Brine did not state claim under Fed. R. Bankr. P. 9011 nor did he

comply with that rule's safe harbor requirements set forth in Fed. R. Bankr. P.

9011(c)(1)(A).  Accordingly, O'Brine's Motion for Counsel Fees is denied without

prejudice.  The Court shall permit O'Brine to seek counsel fees in conjunction with his

contempt petition with respect to the Judgment of Divorce in the Middlesex Probate and Family Court.

D. Motion for Relief from Stay

A motion for relief from stay should be granted when "the party seeking relief has a colorable claim to property of the estate."  Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26, 33 (1st Cir. 1994).  The Grella court further stated:

> The statutory and procedural schemes, the legislative history, and the case law all direct that the hearing on a motion to lift the stay is not a proceeding for determining the merits of the underlying substantive claims, defenses, or counterclaims. Rather, it is analogous to a preliminary injunction hearing, requiring a speedy and necessarily cursory determination of the reasonable likelihood that a creditor has a legitimate claim or lien as to a debtor's property. If a court finds that likelihood to exist, this is not a determination of the validity of those claims, but merely a grant of permission from the court allowing that creditor to litigate its substantive claims elsewhere without violating the automatic stay.

> Id. at 33-34.

In this case, the Middlesex Probate and Family Court issued an Order requiring Gove to pay the GAL fees to O'Brine.  Gove failed to pay those fees.  Consequently, O'Brine incurred fees in attempting to enforce the Middlesex Probate and Family Court's Order and obtain his fees.  Courts have the discretion to order those found in contempt of court orders to pay attorney's fees that the moving party incurs in enforcing court orders.  See, e.g., Demoulas v. Demoulas Super Markets, Inc., 424 Mass. 501, 571 (1997).   Accordingly, this Court finds that O'Brine has established a colorable claim for relief from stay against Gove and may proceed to assert his claim in the Middlesex Probate and Family Court.

Bankruptcy courts may abstain from deciding issues that the probate court is better suited to adjudicate. *See* <u>In re Berman</u>, 352 B.R. 533, 543 (Bankr. D. Mass. 2006). In this case, the Middlesex Probate and Family Court is better suited to determine the total amount of Gove's award. First, the Middlesex Probate and Family Court can better determine whether Gove is entitled to any attorney's fees. Because the Middlesex Probate and Family Court issued the order for Gove to pay the GAL fees, that court is in the unique position to determine whether Gove's refusal to pay and O'Brine's subsequent incurrence of attorney's fees render Gove in contempt of the order. *See* <u>In re Perry</u>, 131 B.R. 763, 770-71 (Bankr. D. Mass. 1991). Second, the Middlesex Probate and Family Court can better determine the amount of the GAL fees that Gove must pay O'Brine. Because the Middlesex Probate and Family Court ordered Gove to pay O'Brine the GAL fees incurred in the divorce action, it is particularly appropriate that it determine the amount of fees and any associated attorney's fees O'Brine should receive in attempting to collect the GAL fees, if O'Brine prevails on his petition for contempt. This Court grants O'Brine's Motion for Relief from Stay under 11. U.S.C. § 362(d)(1) "for cause" so that O'Brine can seek counsel fees as an award for contempt of the Judgment of Divorce in the Middlesex Probate and Family Court. *See* <u>Id</u>.

## IV. CONCLUSION

In accordance with the foregoing, the Court shall enter orders granting Plaintiff's Motion for Summary Judgment, denying Plaintiff's Motion for Counsel Fees and granting the Motion for Relief from Stay. The amount of any fees awarded to O'Brine by the Middlesex Probate and Family Court shall not be subject to the discharge in the

Debtor's Chapter 7 bankruptcy case. The Court finds that Plaintiff's Motion to Compel

Defendant to Answer Plaintiff's Interrogatories and Production of Documents is moot.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: January 13, 2011